# EXHIBIT A

Case 2020CV005970   Document 3   Filed 10-08-2020   Page 3 of 16

FILED
10-08-2020
John Barrett
Clerk of Circuit Court
2020CV005970
Honorable Laura Gramling
Perez-32
Branch 32

STATE OF WISCONSIN     CIRCUIT COURT     MILWAUKEE COUNTY
                                   CIVIL DIVISION

CRYSTAL BARTZ
5316 Mead Rd.
Greendale, WI 53129,

                     Plaintiff,

v.

ASSET RECOVERY SOLUTIONS LLC
2200 East Devon Avenue, Suite 200
Des Plaines, IL 60018

    and

BUREAUS INVESTMENT GROUP PORTFOLIO
NO 15 LLC,
650 Dundee Road, Suite 370
Northbrook, IL 60062

                     Defendants.

**COMPLAINT**

Case No.:_____
Classification Code: 30301

**Jury Trial Demanded**

COMES NOW Plaintiff Crystal Bartz, by Plaintiff's Attorneys, Ademi LLP, and for a cause of action, states as follows:

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to Wis. Stat. § 801.05(3). Defendant's collection activities were directed at Wisconsin residents in Wisconsin. Venue in Milwaukee County is proper because the claim arose in Milwaukee County,

and Defendant attempted to collect a debt in connection with a consumer transaction that occurred in Milwaukee County. Wis. Stat. §§ 801.50; 421.401(1)(a) ("The venue for a claim arising out of a consumer transaction or a consumer credit transaction is the county: … Where the customer resides ….").

## PARTIES

3. Plaintiff Crystal Bartz is an individual who resides in Milwaukee County.

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301, in that Plaintiff engaged in a consumer transaction.

6. Defendant Asset Recovery Solutions, LLC ("ARS") is a foreign limited liability company with its principal offices located at 2200 East Devon Avenue, Suite 200, Des Plaines, Illinois 60018.

7. ARS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. ARS is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. ARS is licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

10. ARS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103.

11. Defendant Bureaus Investment Group Portfolio No. 15, LLC ("BIG 15") is a foreign limited liability company with its principal offices located at 650 Dundee Road, Suite 370, Northbrook, Illinois 60062.

12. BIG 15 is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

13. BIG 15 is engaged in the business of collecting debts originally owed to others and incurred for personal, family, or household purposes.

14. BIG 15 purchases receivables associated with defaulted consumer debts, such as defaulted consumer credit cards, with the intention of collecting those receivables.

15. When collecting debts that it has purchased, BIG 15's principal purpose is the collection of consumer debts. *See Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 268 (3d Cir. 2019).

16. BIG 15 is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103.

17. A company meeting the definition of a "debt collector" under the FDCPA is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf) (*citing Pollice v. National Tax Funding L.P.*, 225 F.3d 379, 404-06 (3d Cir. 2000); *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994)).

18. A company meeting the definition of "debt collector" under the FDCPA is independently required "to monitor the actions of those it enlists to collect debts on its behalf." *Janetos*, 825 F.3d at 325.

3

**FACTS**

19. On or about March 19, 2020, Defendant ARS mailed a debt collection letter to Plaintiff regarding an alleged debt owed to BIG 15, with original creditor "COMENITY CAPITAL BANK" ("Comenity"). A copy of this letter is attached to this complaint as Exhibit A.

20. Upon information and belief, the alleged debt referenced in Exhibit A was incurred for personal, family, or household purposes.

21. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

22. Upon information and belief, Exhibit A is a form debt collection letter, used by Defendants to attempt to collect alleged debts.

23. Upon information and belief, Exhibit A was the first written communication that Defendants mailed to Plaintiff regarding the alleged debt referenced in Exhibit A.

24. Exhibit A contains language that largely reflects the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail to the consumer along with, or within five days of, the initial communication:

> This communication is from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose. Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that the debt or any portion thereof is disputed, this office will obtain verification of the debt or a copy of a judgment and mail a copy of such judgment or verification to you. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

25. Exhibit A states:

> We would like to take this opportunity to inform you that BUREAUS INVESTMENT GROUP PORTFOLIO NO 15 LLC has purchased your account from COMENITY CAPITAL BANK. If you wish to resolve your obligation, call us toll free at 877-253-3543. All payments must come to our office to ensure proper credit to your account.

26. Exhibit A also states:

> **Please send payments and correspondence to:**
>
> Asset Recovery Solutions, LLC
> 2200 E. Devon Ave Ste 200
> Des Plaines, IL 60018-4501
> 877-253-3543, Ext. 572

27. The representations that "all payments must come to our office to ensure proper credit to your account" and that the consumer should "send payments and correspondence to" ARS is false, deceptive, misleading, and confusing to the unsophisticated consumer.

28. These representations are especially confusing given that Comenity had sent Plaintiff a letter a few days before Defendant sent Exhibit A, telling Plaintiff to send payments and correspondence directly to BIG 15:

> All future questions, correspondence and outstanding payments associated with this account should be directed to:
>
> BUREAUS INVESTMENT GROUP PORTFOLIO, NO. 15, LLC
> 650 Dundee Rd. Suite 370 Northbrook, IL 60062
> 877-887-4824
> https://www.thebureaus.com/

A copy of this letter is attached as Exhibit B.

29. An unsophisticated consumer receiving Exhibit A would not understand that she could contact Defendant BIG 15 directly to dispute the debt.

30. At a minimum, the consumer would be confused by the contradictory instructions between Exhibit A and B, or would have the false impression from Exhibit A that she could not dispute the debt with BIG 15.

31. Upon information and belief, in the event the consumer notified Defendant BIG 15 directly that the debt was disputed, BIG 15 would process the dispute as required by the FDCPA because the FDCPA does not authorize debt collectors to ignore disputes simply because they were

5

sent to the "wrong" address. *See Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 347 (7th Cir. 2018) ("it is irrelevant that the Clinic sent the Letters to PRA's general counsel rather than the special disputes department."); *see also* 15 U.S.C. § 1692e(8).

32. An unsophisticated consumer would understand the instructions that "payments must come out our office to ensure proper credit" and to "send payments and correspondence to" ARS to mean that the debt would not be marked as disputed if the consumer disputed the debt with Defendant BIG 15 directly.

33. Disputing the debt with BIG 15 directly entitles the consumer to greater protections than disputing it to ARS.

34. If the consumer disputes the debt with ARS, ARS could comply with the FDCPA by ceasing collection efforts and returning the account to BIG 15, allowing BIG 15 to assign the account for collection with another collection agency. *See Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 484 (7th Cir. 1997) (observing that "it is for Congress, and not the courts, to close this alleged loophole in the FDCPA.").

35. On the other hand, if the consumer disputes the debt with BIG 15, the actual assignee holding equitable title to the account, then BIG 15 could not comply with the FDCPA unless it actually ceased direct and indirect collection of the debt through other agencies until it provided verification of the debt.

36. Further, the representation that "all payments must come to our office to ensure proper credit to your account" is false, deceptive, misleading, and confusing because an unsophisticated consumer would understand that Defendants would continue to report and collect the debt if the consumer paid BIG 15 directly rather than ARS.

37. Plaintiff was misled and confused by <u>Exhibit A</u>.

38. The unsophisticated consumer would be misled and confused by <u>Exhibit A</u>.

### *The FDCPA*

39. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Messerli & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist.

LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

40.   Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection

practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

41. Misrepresentations of the character, amount or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Encore Receivable Management, Inc.*, 18-cv-1484-WED, 2019 U.S. Dist. LEXIS 134377 (E.D. Wis. Aug. 9. 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

42. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

43. 15 U.S.C. § 1692e(2)(A) specifically prohibits "the character, amount, or legal status of any debt."

44.     15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

45.     15 U.S.C. § 1692e(8) specifically prohibits "communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

46.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

47.     15 U.S.C. § 1692f generally prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt."

### *The WCA*

48.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

49.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

50.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

51.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

52.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

53.     Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

54.     Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

55.     Wis. Stat. § 427.104(1)(f) states that a debt collector may not: "Disclose or threaten to disclose information concerning the existence of a debt known to be reasonably disputed by the customer without disclosing the fact that the customer disputes the debt."

56.     Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

57.     Wis. Stat. § 427.104(1)(L) states that a debt collector may not "threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

58. Count I is brought against both Defendants.

59. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

60. <u>Exhibit A</u> contains false, deceptive, misleading, and confusing representations that are inconsistent with the consumer's right to dispute the debt or request the name and address of the original creditor.

61. <u>Exhibit A</u> contains false, deceptive, misleading, and confusing representations that indicate that Defendants could continue to collect and report the debt in the event that the consumer tendered payment to BIG 15 directly rather than ARS.

62. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(8), 1692e(10), 1692g(a)(3), 1692g(a)(4), 1692g(a)(5), and 1692g(b).

## COUNT II – FDCPA

63. Count II is brought against BIG 15.

64. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

65. BIG 15 did not monitor ARS to ensure that ARS complied with the FDCPA.

66. Defendant engaged or authorized BIG 15 to violate the FDCPA.

67. Defendant violated 15 U.S.C. § 1692f.

## COUNT III – WCA

68. Count III is brought against both Defendants.

69. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

70. <u>Exhibit A</u> contains false, deceptive, misleading, and confusing representations that are inconsistent with the consumer's right to dispute the debt or request the name and address of the original creditor.

71. <u>Exhibit A</u> contains false, deceptive, misleading, and confusing representations that indicate that Defendants could continue to collect and report the debt in the event that the consumer tendered payment to Defendant BIG 15 directly rather than Defendant ARS.

72. Defendants violated Wis. Stat. § 427.104(1)(f), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

73. Plaintiffs bring this action on behalf of a class, consisting of:

(a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the Complaint in this action, (c) seeking to collect a debt incurred for personal, family, or household purposes, (d) between October 8, 2019 and October 8, 2020, inclusive, (e) and was not returned by the postal service.

74. Each class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

75. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common questions are whether Defendant complied with the FDCPA and the WCA.

76. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

77. Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

78. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

79. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: October 8, 2020

**ADEMI LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com